## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| **OWEN JACOB ("JAKE") WIER,** | § | |
| **AN INDIVIDUAL WITH A DISABILITY ,** | § | |
| **BY HANNAH WIER AND DANIEL WIER,** | § | |
| **PARENTS OF JAKE WIER AND** | § | |
| **HIS ATTORNEYS IN FACT;** | § | |
| **HANNAH WIER, INDIVIDUALLY, AND** | § | |
| **DANIEL WIER, INDIVIDUALLY; AND** | § | |
| **CAROLINE WIER, INDIVIDUALLY; AND** | § | |
| **MICHAEL INSELMANN,  INDIVIDUALLY** | § | |
| | § | |
| **Plaintiffs,** | § | **CASE NO. 4:23-cv-2912** |
| | § | **JURY TRIAL DEMANDED** |
| **V.** | § | **FRCP RULE 38** |
| | § | |
| **SPRING BRANCH INDEPENDENT** | § | |
| **SCHOOL DISTRICT;  JEANNE** | § | |
| **BREIDENTHAL, TEACHER;** | § | |
| **ASSISTANT PRINCIPAL, SHERRY FOLGER;** | § | |
| **NOTTINGHAM PRINCIPAL ROY MOORE;** | § | |
| **RIDGECREST PRINCIPAL PATRICIA** | § | |
| **THOMAS; INDIVIDUALLY; KRISTEN** | § | |
| **MURPHY, LSSP,  INDIVIDUALLY; AND** | § | |
| **TEACHER NYDIA MARTIR, INDIVIDUALLY,** | § | |
| | § | |
| **Defendants.** | § | |

### ORIGINAL COMPLAINT

Come now Owen Jacob ("Jake") Wier, Hannah Wier, Daniel Wier, on behalf of themselves individually and as attorneys-in-fact for Jake, Caroline ("Cricket")Wier, and Michael Inselmann ("Plaintiffs") and file this Original Complaint against Defendants Spring Branch Independent School District ("SBISD"), teacher Jeanne Breidenthal, Individually; Assistant Principal Sherry Folger, Individually; Nottingham Elementary Principal Roy Moore, Individually; Ridgecrest Principal Patricia Thomas, Individually; LSSP (Licensed Specialist in School Psychology) Kristen Murphy, Individually; and teacher Nydia Martir, Individually, and state as follows:

## INTRODUCTION

1.   Jake Wier is 18 years old. His date of birth is August 12, 2004. Jake is intellectually gifted. Jake has the disabilities of Attention Deficit Hyperactivity Disorder Combined Presentation (ADHD), Autism spectrum disorder, mood disorder, and indicators of Post Traumatic Stress Disorder. When Jake was ten years old and in the fifth grade during the 2014-2015 school year, he attended elementary school in SBISD. While a student at SBISD in fifth grade, Defendants collectively and/or individually caused Jake to be repeatedly wrongfully restrained by school staff and subjected to arrests and/or threats of arrest by the Spring Branch Independent School District police department. Indeed, at the age of 10, he was deliberately arrested by SBISD police at his home for behaviors at school in a non-emergency situation at the request of Defendant Briedenthal and others. Defendants' actions caused Jake at the time to be upset, a danger to himself or others, to be fearful, to pick his ears until they bled, to be unable to sleep at night and to be in fear of attending school. As an adult, in March of 2023, Jake has been identified with indicators of Post-Traumatic Stress Disorder (PTSD) related to the events that occurred while he was a student in SBISD in fifth grade.

2.   Because of Defendants' actions in 2014-2015, Jake could not return to public school; having already threatened suicide in second grade, Jake threatened suicide in fifth grade if he was required to return to SBISD, where the pattern of restraints, arrests or threats of arrest were unabating.

3.   Resultingly, Jake's parents and grandfather, Mike Inselmann, first paid for him to attend Fusion Academy, a local private school, then a Wilderness Camp, next Little Keswick, a private school in Virginia, and then Woodhall, a private school in Connecticut.

4.   Jake's placements at the Wilderness Camp, Little Keswick, and Woodhall required him to

be separated from his entire family from approximately May 2017 to June 2023, a total of some

six years. In particular, Jake and his sister, Caroline (Cricket) who is just two years older than Jake,

were not able to have a normal sibling relationship because of the separation.

5.   The entire cost of Jake's schooling and related expenses after fifth grade to the present

time is $879,368.49.

6.   Jake's parents, in their own right, pursuant to the Individuals with Disabilities Education

Act, 20 U.S.C. §§1400 et seq. filed a special education due process hearing in 2016,

which resulted in years of litigation, including a decision known as *SBISD v. O.W.*, 961 F.3d 781

(5th Cir. 2020). The parents had requested SBISD pay for Fusion Academy for summer 2015,

2015-2016 and 2016-2017 which was ordered in part, and remains subject to additional

proceedings after the Fifth Circuit decision. A hearing on remand was completed in June 2023 and

same remains pending before an administrative hearing officer. Jake can do nothing more in regard

to that proceeding but await a decision which will be forthcoming within 60 days from July 23,

2023. An amended complaint in the instant matter may be filed at that time.

## JURISDICTION AND VENUE

7.   This current case is brought pursuant to the Americans with Disabilities Act as Amended,

42 U.S.C. §§12101 et seq., Title II ("ADA") and all related regulations and Section 504 of the

1973 Rehabilitation Act, 29 U.S.C. 794 ("§504") and all related regulations. The case is also

brought pursuant to 42 U.S.C. §1983, the Fourth Amendment of the U.S. Constitution, negligence,

negligent infliction of emotional distress and loss of consortium. This Court has original

jurisdiction over federal statutes including the ADA/§504, Section 1983, the Fourth Amendment

of the U.S. Constitution. 28 U.S.C. §1331. The Court also has jurisdiction over related state claims

of negligence, negligent infliction of emotional distress and loss of consortium. 28 U.S.C. §1387.

8.  Venue in this Court is proper under 28 U.S.C. §1391(b).

**THE PARTIES**

9.  **Plaintiffs Jake Wier, his mother Hannah Wier, his father Daniel Wier, his sister Caroline ("Cricket") Wier, and his grandfather Mike Inselmann** bring this action. As Jake is no longer a minor, his full name is used. At all times material to this action, Plaintiffs' legal residence was within the Spring Branch Independent School District boundaries.

10. There is no dispute that O.W./Jake is a gifted individual with a superior intellectual ability. SBISD identified him as a gifted and talented child when he was in kindergarten. Jake also is a qualified individual with a disability protected by the ADA (Title II). Jake  ("O.W.") is a person with at least six disabilities[1] including:

    A.  ADHD Combined Presentation, or ADHD predominantly inattentive leading to poor self-management and structure,

    B.  Mood Disorder,

    C.  Autism Spectrum Disorder, Level 1 (requiring supports without intellectual impairment and without language impairment),

    D.  Depression,

    E.  Anxiety Disorder, (excessive worry, distress, stress)

    F.  Trauma - Post Traumatic Stress Disorder (PTSD).

Each of Jake's disabilities impacts major life activities. A major life activity includes but is not limited to caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping,

---

[1] By history, Jake ("O.W.") also met eligibility for a speech impairment prior to his third birthday due to articulation concerns. And, pursuant to the Individuals with Disabilities Education Act, IDEA, 20 U.S.C. §1400 et seq., O.W. was identified as eligible for IDEA based on an emotional disturbance. 34 C.F.R. §300.8(c)(4).

walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating and working. 42 U.S.C. §12012, Sec. 3. (Definition of a Disability).

11. Jake's ADHD, mood disorder, autism, depression and anxiety and the most recently diagnosed PTSD impact his major life activities of caring for oneself, sleeping, learning, reading, concentrating, thinking, communicating and working. Jake is presently prescribed Lexapro, Wellbutrin, Concerta, Ritalin, and Clonidine and continues to be under the care of a psychiatrist.

12. **Defendant Spring Branch Independent School District** ("SBISD") is a
public school district in the State of Texas. It is a local educational agency that receives federal funds and is obligated to comply with the ADA/§504. It is also subject to 42 U.S.C. §1983, the Fourth Amendment to the U.S. Constitution, and state laws protecting Jake from negligence, negligent supervision, and loss of consortium.

13. **Defendant Jeanne Briedenthal** was O.W. ("Jake's) fifth-grade teacher at
Nottingham Elementary during School year 2014-2015 who had an altercation with O.W. on January 13, 2015, and individually and personally "pressed charges" against him, resulting in him being arrested at home the next day by SBISD police for the altercation that happened at school. Briedenthal failed to provide O.W. the reasonable accommodation of not being subject to police intervention and arrest or threats of arrest because of symptoms of his disabilities.

14. **Defendant Sherry Folger** was the assistant principal at Nottingham Elementary during the 2014-2015 school year; she was present at the time of the January 13, 2015, incident, held or restrained O.W. and encouraged calling of the police. Folger knew, as a result of an August 2014 letter from O.W.'s psychiatrist, Dr. Robbie Wright, that O.W. had ADHD Combined Presentation, and that Dr. Wright had requested reasonable accommodations. Folger failed to provide O.W. the

reasonable accommodation of not being subject to police intervention and arrest or threats of arrest and use of excessive restraints because of symptoms of his disabilities.

15. **Defendant Roy Moore** was the principal at Nottingham Elementary during the 2014-2015 school year, and was told by Hannah Wier that O.W. had been in a therapeutic private school prior to Nottingham, was aware that O.W. likely had a disability as of the first or second day of school, and yet failed to take steps to provide O.W. reasonable accommodations. Moore failed to provide O.W. the reasonable accommodation of not being subject to police intervention and arrest or threats of arrest and excessive restraints because of symptoms of his disabilities.

16. **Defendant Nydia Martir** was a special education teacher at Ridgecrest Elementary During the 2014-2015 school year. Martir repeatedly illegally required O.W. to be separated from his peers, requested him to be restrained or restrained him, called the police or encouraged administrators to call the police to interact with O.W. and failed to provide O.W. the reasonable accommodation of not being subject to police intervention and arrest or threats of arrest and use of excessive restraints because of symptoms of his disabilities.

17. **Defendant Patricia Thomas** was the principal of Ridgecrest during the 2014-2015 school year. Thomas and other administrators and staff at her direction called the SBISD police to come to the school and interact with and threaten O.W. in the timeframe of March 2015 – May 2015. Thomas failed to provide O.W. the reasonable accommodation of not being subject to police intervention and arrest or threats of arrest because of symptoms of his disabilities.

**OVERVIEW OF JAKE'S RIGHT TO BRING THIS ACTION**

18. Jake was only 10 years old and in the fifth grade when he was excessively restrained, arrested and subjected to threats of arrest. He is now 18 years old.

19. Plaintiffs Hannah Wier and Dan Wier filed a special education claim pursuant to the

Individuals with Disabilities Education Act, 20 U.S.C. §§1400 et seq. This claim was filed in October of 2016. A special education hearing officer (SEHO) was appointed, heard the case and issued a remedy. The case has been in litigation since; see *SBISD v. O.W.*, 961 F.3d 781 (5th Cir. 2020). However, SEHOs do not have authority to hear any claims other than special education claims; therefore, it would have been futile for the parents to bring these claims to the SEHO.

20. Now that Jake is 18 years old, he can bring these claims. *Clyce v. Butler*, 876 F.3d 145 (5th Cir. 2017).Tex. Civ. Prac. & Rem. Code 16.001 allows Jake and his parents as his next friends and attorneys-in-fact to bring this lawsuit.

21. Lawsuits brought pursuant to the Americans with Disabilities Act as Amended, 42 U.S.C. §12201 and Section 504 can be brought within two years of the events at issue. Civil rights claims brought under 42 U.S.C.S. §1983 are governed by the state's statute of limitations for tort claims, which in Texas is two years but the period is tolled for a person under age eighteen so that the time of legal disability is not included in a limitations period. Tex. Civ. Prac. & Rem. Code  §§16.001 &16.003. Thus, Jake can file suit for personal injuries and discrimination suffered as a minor before he reaches age twenty.

22. Texas's tolling provision can never be waived by a minor, either directly or indirectly through a next friend. *Clyce v. Butler*, supra.

## STATEMENT OF FACTS

**O.W.'s Educational History Before Fifth Grade During the 2014-2015 School Year.**

23. O.W. has experienced self-regulation and adjustment difficulties since he was a toddler.

24. O.W. attended pre-kindergarten at three different preschools, two in the Houston area. He was asked to leave two of the day cares because of significant impulse control problems, aggression and oppositional behaviors.

25. When O.W. was 4 years, he was evaluated and determined to have very superior Intelligence and Oppositional Defiant Disorder by Dr. Catherine Guttentag. She recommended that O.W. be in the Gifted and Talented program because he is an extremely bright child likely to show better behavior and attention when working at a level that is appropriately challenging to him.

26. O.W. attended Kindergarten at Nottingham and was aggressive towards other children. SBISD did not evaluate O.W. for any disability during kindergarten.

27. Parents paid for O.W. to attend first and second grade at Rainard (a private school for gifted children). O.W. threatened suicide in second grade and that lead to him leaving Rainard.

28. From third grade forward through the fifth grade (2014-2015)[2] O.W. was under the care of Dr. Robbie Wright, a psychologist, and Dr. Felecia Powell-Williams, a clinical counselor. Dr. Powell-Williams was O.W.'s counselor at The New School and worked with him daily beginning in third grade and continuing through fourth grade.

**The Entry to Nottingham (5th Grade)**

29. Before O.W. began at Nottingham Elementary, when his mother registered O.W., she shared with Nottingham an August 17, 2014, letter from psychiatrist Dr. Robbie Wright asking for him to have Section 504 accommodations. The parent tried to reach Ms. Briedenthal, the fifth-grade teacher, to inform her about Dr. Robbi Wright and O.W.'s background and needs. It was after 10:00 p.m. the night before school began when they finally spoke, and it was a short conversation.

30. During the first two days of school, O.W. had serious misbehaviors. On the first day, he drew violent images of murder and death including anti-Semitic language. The next day he used obscenities and threw objects.

---

[2] O.W. continued to be under the regular care of Dr. Wright and Dr. Powell-Williams until he moved to Little Keswick in 7th grade. Dr. Powell-Williams has also seen him in 2018 and more recently (March 2023) by Dr. Powell-Williams.

31. Hannah Wier told Nottingham staff that O.W. had been diagnosed with ODD, Mood Disorder, Anxiety and Depression. On August 26, 2014, Hannah Wier signed release of records forms, including a release permitting Nottingham staff to obtain all records from The New School.

32. Again, early in the 2014-2015 school year, Hannah Wier arranged for Dr. Powell-Williams to be available to talk to school staff including signing a release so that school staff could speak with her at any time. Dr. Powell-Williams spoke with school staff via telephone, offered strategies for O.W. and disclosed triggers that disrupted his ability to function. Powell-Williams spoke to Principal Moore and provided ideas and solutions and interventions.

33. O.W. had incidents of behavior on a daily basis during fifth grade at Nottingham.

34. The Fifth Circuit found that by early October 2014, O.W. was interrupting classes daily. He would regularly engage in acts of verbal and physical aggress, used extreme profanity, threw objects at the teacher, refused to follow directions, left assigned areas, including the classroom without permission, disrupt lessons, played with the teachers ActivBoard and yell profanities from the back of the classroom, slept excessively in class and touched others' property. See, *SBISD v. O.W.*, 961 F.3d 781, 786-788 (5th Cir. 2020).

35. Despite having received a letter and information from psychiatrist Dr. Wright, SBISD did not take any specific steps to help O.W.

36. On September 16, 2014, Ms. Wier signed a notice and consent for an initial 504 evaluation.

37. On September 23, 2014, Ms. Wier provided a Family History Form which gave a history of O.W.'s behavioral problems and list of medications as well as a May 2012 private evaluation of O.W.

38. At an October 8, 2014, meeting, SBISD determined to have O.W. qualify for 504 accommodations. O.W. was being removed from class on a daily basis due to his disruptive

behavior. He qualified for 504 accommodations on October 8, 2014. At the same meeting, Hannah Wier asked for a special education evaluation.

39. O.W. continued to have behavioral issues; he was disciplined three times in November, fell asleep in class and by end of the semester, his grades had dropped.

**The January 13, 2015, Incident at Nottingham Elementary**

40. O.W. was just 10 years old at the time of an incident with his fifth-grade teacher, Defendant Jeanne Briedenthal. Ms. Briedenthal is "just shy" of 6'3" in height; at the time of the January 13, 2015, incident. Briedenthal was estimated to weigh over 200 lbs. In contrast, O.W. was much smaller than teacher Briedenthal; he was about 4'8" in height and weighed just 108-110 lbs. Briedenthal was responsible for Gifted and Talented (GT) students during 2014-2015. O.W. was one of her students; she knew him to be GT. Though he would call teachers names or tell the teachers to shut up, he was never malicious, and it was always done to "get a response."

41. Briedenthal testified under oath that ***before*** January 13, 2015, O.W. had **never** been physically aggressive toward her or anybody.

42. On January 13, 2015, the fifth-grade class went to the Nottingham library, and an incident occurred. Allegedly, O.W. went into the room without permission and Briedenthal reprimanded him. He stepped on her foot and said he "hated" her. He was cussing under his breath. Next, he self-injured, banging his head against a desk, leaving a mark on his head.

43. O.W. said he was "planning on murdering" Ms. Briedenthal. In all likelihood this was not plausible given her weight and size advantage over O.W. and his complete lack of weapons. Yet, in response, Ms. Briedenthal said to O.W.: "Okay, Owen I dare you!" Briedenthal was known to yell and to be demeaning and belittling to students. Briedenthal said Jake allegedly "went at me and stopped himself."

10

44. The rest of the class then went to lunch, but O.W. refused to leave for lunch. O.W. then allegedly "charged at her and hit her." Assistant principal Folger came in and held O.W.

45. Next, Ms. Briedenthal went to the office and called O.W.'s mother, and the district police were called. As of the time that she left the classroom, O.W. was not a danger to Ms. Briedenthal, as he was in the principal's office.

46. By the time the police arrived, O.W. was *already* in the principal's office with his parent, Hannah Wier. O.W. was crying.

47. Ms. Briedenthal left the office and went back to the classroom where she wrote up a summary of events which on information and belief she provided to the SBISD police officers.

48. O.W. remained in the principal's office with his mother. He was not in Ms. Briedenthal's vicinity, and Ms. Briedenthal was not in any immediate danger. Ms. Wier observed O.W.'s demeanor in the principal's office; he was crying and upset. He was not acting violently.

49. Ms. Briedenthal was not injured, and did not require any medical care as a result of the January 13, 2015, incident.

50. Despite a complete lack of danger, Ms. Briedenthal pressed charges against O.W. with the SBISD police the next day, January 14, 2015.

**The January 14, 2015, Arrest of O.W. at His Home**

51. On January 14, 2015, O.W. was arrested by SBISD police at his home. This was the day *after* the incident with Ms. Briedenthal. At home, O.W. was not in the vicinity of any students who could be at risk of injury.

52. No school staff or administrators were present to be in any immediate danger on the date

that 10-year-old O.W. was arrested *at his home*, handcuffed, placed into a police car and driven to the SBISD police station. According to the police report, 10-year-old O.W. was transported to the police station at 1:30 p.m. (1330 hours) and was released to his parents at 2:23 p.m. (1423 hours).

53. At a meeting January 15, 2015, the parents requested assurances that SBISD would not bring police in to intervene with O.W. going forward. SBISD staff verbally told Hannah Wier and Dan Wier that they would no longer use police intervention.

54. After Ms. Briedenthal eventually admitted to assistant principal Ms. Folger that she had "dared" O.W. to murder her, criminal charges were dropped against O.W. on or about June 3, 2015.

**The Threats of Arrest**

55. Meanwhile, despite oral promises not to involve police, SBISD continued to call police after the January 13, 2015, incident up to and through the last day of O.W.'s fifth grade year of school, June 3, 2015.

56. After the January 13, 2015, incident with teacher Briedenthal, (and according to her never before), SBISD reported that O.W. physically attacked peers or adults when he was in the Ridgecrest program.

57. Police were called to the school at least four more times while O.W. was at Ridgecrest between March 2015 and June 3, 2015.

58. On May 5, 2015, SBISD called police to Ridgecrest. The police taunted O.W. stating "did he want to go to jail again" and reminding him of being arrested previously.

59. O.W. reacted to police interventions with heightened anxiety manifested by picking at his ears until they were bloody and oozing, chewing on his shirt, having to sleep with one of the parents at night, having to have a parent in the bathroom with him when he took showers and being agitated. Behaviors intensified after police interventions.

12

**Defendants' Use of Restraints**

60. Because of O.W.'s sensory issues, the use of physical restraints is not recommended for him. Dr. Powell-Williams, a clinical psychologist testified that because of O.W.'s sensory issues, even just touching him in a positive way (i.e., a pat on the back) could agitate him.

61. Despite awareness of this sensory problem, Defendants caused O.W. to be restrained at least eight times while he was attending Ridgecrest Elementary on: March 24, 2015, March 25, 2015, April 6, 2015 (twice), May 5, 2015, May 7, 2015 (twice) and May 11, 2015.

62. In March of 2023, Dr. Felicia Powell-Williams, who had known O.W. since third grade, met with now 18-year-old Jake to discuss his present situation. As a young adult, Jake was unable to fully discuss in the safety of Dr. Felicia Powell-Williams presence, without anxiety and fear, his fifth-grade year at SBISD where he had been arrested, threatened with arrest and involved in police intervention at least five times and restrained at least 8 times. Dr. Powell-Williams identified Jake as having indicators of Post Traumatic Stress Disorder.

## FIRST CAUSE OF ACTION – 42 U.S.C. §1983

63. Based on the facts alleged above, Plaintiffs bring as their first cause of action that Defendants violated 42 U.S.C. §1983. Specifically, they allege that the calling of police to intervene with Jake in a school setting: 1) occurred under color of state law, and 2) resulted in the deprivation of his federal constitutional and statutory right to not be arrested or to be under threat of arrest when he went to school and to not be arrested at home and handcuffed.

64. Jake had the right to attend public school with his peers in a safe environment free of the fear of being arrested due to actions that he was unable to control, due to his various disabilities. The use of handcuffs on Jake, at age 10, on January 14, 2015, when he was calm, at his home, and not a danger to anyone was excessive force.

### SECOND CAUSE OF ACTION – ADA

65. Based on the facts alleged above, Plaintiffs bring as their second cause of action a violation of the Americans with Disabilities Act as Amended, 42 U.S.C. §12101, et seq.

66. There is no dispute that Defendant SBISD must comply with the ADA (Title II).

67. The ADA (2008) was passed to provide a clear and comprehensive national mandate to eliminate discrimination against individuals with disabilities and provide clear and strong enforceable standards addressing discrimination against individuals with disabilities. 42 USC §12101(b). Congress recognized in passing the ADA that discrimination occurs in educational settings. Disabilities in no way diminish a person's right to fully participate in all aspects of society, and yet individuals with disabilities commonly encounter discrimination including both outright exclusion and relegation to lesser services, programs or activities. 42 USC §12101(a)(1)(3)(5)

68. O.W. (Jake) is and was a qualified individual with a disability entitled to the full protections of the ADA because he had and has disabilities. In fifth grade, Jake's ADHD, mood disorder, autism, depression and anxiety impact his major life activities of caring for oneself, sleeping, learning, reading, concentrating, thinking, communicating and working. One of his key difficulties is communicating, given a slow processing speed, notwithstanding his intelligence.

69. As O.W. began fifth grade, Defendants were on notice by a letter from his psychiatrist in August of 2014, that Jake had ADHD Combined Presentation. ADHD Combined Presentation is a neurobehavioral disorder that is characterized by both hyperactivity-impulsivity and inattention. Children with ADHD Combined presentation may react emotionally, experience forgetfulness, have an inability to relax, be disorganized and act without thinking.

70.  Before school began during the 2014-2015 school year, Defendants were informed by

14

Plaintiff Hannah Wier that O.W. had disabilities. Hannah Wier specifically tried to contact teacher Jeanne Briedenthal to talk with her about O.W.'s disabilities and needs.

71. Although Ms. Wier told Principal Moore that O.W. was under the care of experienced psychiatrist Dr. Robbi Wright and provided a release so SBISD staff could speak with her, SBISD staff did not timely contact Dr. Wright and request assistance about the necessary reasonable modifications and accommodations for O.W.

72. In addition, at the start of his fifth-grade year, and at his parents' request, Jake's counselor, Dr. Powell-Williams communicated with the SBISD, and Nottingham advising principal Roy Moore that Jake needed a therapeutic setting, 1:1 instruction and a positive relationship model with his teachers and a special education evaluation.

73. During the 2014-2015 school year, in October of 2014, SBISD agreed in writing that O.W. was a student protected by Section 504.

74. During the 2014-2015 school year, Defendants excluded Jake from participation in, or denied him the benefits of 1) Gifted and Talented (GT) programming; 2) attendance in regular education classes; 3) attendance at school for fear of arrest or police involvement at his campuses.

75.  This denial of benefits or discrimination was by reason of O.W.'s disability which caused him to: 1) react and act out; 2) become upset and 3) misbehave. Defendants did not reasonably accommodate Jake, failed to provide services, refusing him reasonable accommodations and services he needed to meet his needs, and therefore violated the ADA.

76. Jake was entitled to receive an education that was adequate or comparable or equivalent to the educational benefit enjoyed by his non-disabled peers. Jake did not receive that education. SBISD did not recognize all of O.W.'s needs as a qualified individual with a disability and did not

provide him a program designed to provide him an appropriate public education through regular or special education that was adequate to benefits enjoyed by his non-disabled peers.

77. O.W. did not receive the same number of school hours in session as non-disabled peers.

78. O.W. was denied a program equal to the educational benefits enjoyed by his non-disabled peers, to wit, being able to attend school without fear that SBISD would call/contact police officers to come to the school district and speak with O.W. or arrest him or threaten him with arrest.

79. Notably, O.W. was never identified by SBISD as a special education student in kindergarten, despite difficulties in preschool which caused him to be dismissed from preschool. O.W. attended Nottingham Elementary. At the end of the year, the family told the kindergarten teacher that they were going to place him in private programming, and the teacher responded, "It might be for the best." O.W. attended first Rainard and then The New School, both of which were private schools in the area. O.W. attended private school, Rainard and The New School at parent expense from grade 1 through Grade 4.

80. When he returned to SBISD for fifth grade, O.W. was again denied reasonable accommodations so he could receive the full benefits of the school program, including gifted and talented instruction, special education eligibility, special instruction and related services without fear of being arrested, threatened with arrest, or excessively restrained in reaction to his disability symptoms.

81. Such intentional discrimination exists according to 5th Circuit where the educational professionals' conduct allows an inference of bad faith or the educators conduct departs grossly from accepted standards.

82. Repeatedly arresting O.W. or threatening to call the police was a gross departure from

educational professional standards for teaching and working with a child who experiences ADHD, autism, anxiety, depression, or a mood disorder.

83. Plaintiffs allege that Defendants educational professionals' conduct was in bad faith and/or departed grossly from accepted standards among educational professionals by failing to initially identify Jake during kindergarten, delaying his identification from August 2014 through January 2015 and then once he was identified, denying him adequate and equal education during fifth grade.

84. During the 2014-2015 school year, in October of 2014, Defendant SBISD, Folger, Moore and Briedenthal knew or should have known that Plaintiff O.W. ("Jake") was protected by the ADA (Title II) because he had a 504 plan.

85. SBISD denied O.W. access to the same benefits of schooling that other fifth graders experienced within the district. Although explicitly aware of O.W.'s disabilities, at least ADHD, and the impact upon him of using an approach that was confrontational vs. a gentle approach, SBISD and the other Defendants engaged in working with O.W. in ways that resulted in power struggles. All Defendants knew or should have known that O.W. – because of his disabilities— needed a gentle and non-provocative approach. Dr. Powell-Williams had shared he should not be touched due to sensory issues, yet the Defendants restrained him making matters worse. He needed time to think as his processing is slow, yet the Defendants ordered him around and caused power struggles.

86. As a result of the Defendants' acts and omissions, O.W. became more upset, fearful of attending school and eventually could not finish his fifth-grade year. This eventually led to a private placement and ultimately to repeating 7th grade.

87. Such intentional discrimination exists, according to 5th Circuit, where the educational

professionals' conduct allows an inference of bad faith or the educators' conduct departs grossly from accepted standards. Repeatedly arresting O.W. or threatening to call the police was a gross departure from educational professional standards for teaching and working with a child who experiences ADHD, autism, anxiety, depression, or a mood disorder. Repeatedly using restraints with O.W. was a gross departure from educational professional standards for teaching and working with a child who experiences sensory issues, ADHD, autism, anxiety, depression or a mood disorder.

88. Plaintiffs allege that Defendants conduct was in bad faith and/or departed grossly from accepted standards among educational professionals by failing to reasonably accommodate him from the date of registration in 5th grade given that they were on notice of his disability of ADHD, delaying his special education identification from August 2014 through January 2015 and denying him adequate and equal education throughout his fifth-grade year.

89. Defendants intentionally deprived O.W. of reasonable accommodations, including the freedom from having police arrest him or staff threatening to have police come to the school and arrest him. They refused him the reasonable accommodation of not calling or threatening to call the police, and not restraining him. They refused him reasonable accommodations by handcuffing him unnecessarily at his home. Defendants departed grossly from accepted standards of managing misbehavior by utilizing improper restraints, and the repeated and unnecessary use of police or threat of use of police.

90. Such exclusion, denial of benefits or discrimination was because of his disabilities.

### THIRD CAUSE OF ACTION – SECTION 504

91. Based on the facts alleged above, Plaintiffs bring as their third cause of action

violations of Section 504 of the Rehabilitation Act of 1973 and 29 U.S.C. Code of Federal Regulations. O.W. was entitled during his fifth-grade year to the protections of Section 504 of the Rehabilitation Act of 1973 and 29 U.S.C. Code of Federal Regulations. Section 504 states that "no qualified individual with a disability in the United States shall be excluded from, denied the benefits of, or be subjected to discrimination under any program or activity that either receives federal financial assistance…."

92. During the 2014-2015 school year, in October of 2014, Defendant SBISD, Folger, Moore and Briedenthal knew or should have known that Defendant SBISD agreed that O.W. was a student protected by Section 504.

93. There is no dispute that Defendant SBISD receives federal funds and therefore must comply with Section 504.

94. SBISD denied O.W. access to the same benefits of schooling that other fifth graders experienced within the district. Although explicitly aware of O.W.'s disabilities, at least ADHD, and the impact upon him of using an approach that was confrontational vs. a gentle approach, SBISD and the other Defendants engaged in working with O.W. in ways that resulted in power struggles. All Defendants knew or should have known that O.W. – because of his disabilities— needed a gentle and non-provocative approach. Dr. Powell-Williams had shared he should not be touched due to sensory issues, yet the Defendants restrained him, making matters worse. He needed time to think, as his processing is slow, yet the Defendants ordered him around and caused power struggles.

95. As a result of the Defendants' acts and omissions, O.W. became more upset, fearful of attending school and eventually could not finish his fifth-grade year.

96. Such intentional discrimination exists, according to 5th Circuit, where the educational

professionals' conduct allows an inference of bad faith or the educators' conduct departs grossly from accepted standards. Repeatedly arresting O.W. or threatening to call the police was a gross departure from educational professional standards for teaching and working with a child who experiences ADHD, autism, anxiety, depression, or a mood disorder. Repeatedly using restraints with O.W. was a gross departure from educational professional standards for teaching and working with a child who experiences sensory issues, ADHD, autism, anxiety, depression or a mood disorder.

97. Plaintiffs allege that Defendants' conduct was in bad faith and/or departed grossly from accepted standards among educational professionals by failing to initially identify Jake during his kindergarten, delaying his identification from August 2014 through January 2015 and then once he was identified, denying him adequate and equal education during fifth grade.

98. Defendants intentionally deprived O.W. of reasonable accommodations, including the freedom from having police arrest him or staff threatening to have police come to the school and arrest him.

**FOURTH CAUSE OF ACTION – FOURTH AMENDMENT-FREEDOM OF SEIZURE**

99. Based on the facts alleged above, Plaintiffs bring as their fourth cause of action violations of The United States Constitution, Fourth Amendment which states that the right of a person to be protected from unreasonable searches and seizures shall not be violated. U.S. Constitution, Amendment IV.

100. Application of the use of physical force to the body of a person with intent to restrain is a Fourth Amendment seizure *even* if the person does not submit and is not subdued. *Torres v. Madrid*, 141 S. Ct. 989 (2021). Brief seizures of a person are still seizures under the U.S. Constitution Fourth Amendment.

101. Jake experienced at least eight physical seizures of his body between March and May of 2015. Such brief seizures were not a part of his special education plan, per order of *SBISD v. O.W.* They were not authorized. They were contrary to professional recommendations due to O.W.'s sensory needs. They were illegal under the Fourth Amendment. They caused Jake to be afraid of school and ultimately caused him to have Post Traumatic Stress Disorder.

## FIFTH-CAUSE OF ACTION – STATE CLAIMS (NEGLIGENCE, NEGLIGENT SUPERVISION, LOSS OF CONSORTIUM)

102. Based on the facts alleged above, Plaintiffs bring as their fifth cause of action violations of state law. Based on the Defendants arrest and threats of arrest of Jake, failure to reasonably accommodate Jake in light of his ADHD, mood disorder, and autism disorder in 5th grade, the facts show that Defendants engaged in negligence, negligent supervision and caused Jake emotional distress and a loss of consortium.

103. In order for Jake to be safe and not be arrested again, or restrained against his will, Jake was moved to out-of-state private schools, first a Wilderness Program, then Little Keswick School and finally Woodhall School. Defendants caused Jake to have to leave home in order to receive appropriate educational services. This deprived Jake, his sister, his mother and father and grandfather of the benefits of a relationship with Jake.

104. Defendants had a duty of care to Jake to ensure his well-being and safety while at school in SBISD and they failed that duty.

105. Defendants breached their duty of care to Jake by wrongfully using the police to intervene, repeatedly restraining him, causing him harm, and as a result "pushing him out" to private schools at the expense of his parents and grandfather. Defendants did not exercise reasonable care in fulfilling their duty of safety to Jake while he was in fifth grade at SBISD.

106. But for defendants' failure to follow basic professional educational standards to

21

keep Jake safe at school without resort to police intervention or restraint, he would not have had to leave home and attend schools out of state. But for SBISD, Jake would have grown up with his sister, Caroline ("Cricket") and his parents.

107. Defendants acts and omissions caused Jake to suffer harm including but not limited to Post Traumatic Stress Disorder as a result of his 5th grade year in SBISD.

108. Defendants owe damages to Plaintiffs, including but not limited to costs of the private schooling in an amount of $879,368.49 which reflects all private school tuition, transportation to/from same, and related expenses and emotional harm as permissible (emotional damages are not requested pursuant to the ADA/504).

109. But for Defendants' acts and omissions causing Jake to be fearful of attending SBISD, Jake was sent thousands of miles away from his family first to Wilderness Camp in North Carolina such that he experienced loss of affection and familial relationships. This included damage to the relationship with Hannah Wier (mother), Daniel Wier (father) Cricket Wier (sister), and Mike Inselmann (grandfather). This caused Jake to experience loss of affection and familial relationships and caused his mother, father, sister and grandfather to experience loss of affection and familial relationships.

110. But for Defendants' acts and omissions causing Jake to be fearful of attending SBISD, Jake could have been educated within SBISD. Instead, Jake was educated at Little Keswick, thousands of miles away from his family. This caused him to experience loss of affection and familial relationships. This included damage to the relationship with Hannah Wier (mother), Daniel Wier (father) Cricket Wier (sister), and Mike Inselmann (grandfather). This caused Jake to experience loss of affection and familial relationships and caused his mother, father, sister and grandfather to experience loss of affection and familial relationships.

111. But for Defendants acts and omissions causing Jake to be fearful of attending SBISD, Jake could have stayed at home and been educated. Instead, Jake was educated at Woodhall, thousands of miles away from his family, including Hannah Wier (mother), Daniel Wier (father) Cricket Wier (sister), and Mike Inselmann (grandfather). This caused Jake to experience loss of affection and familial relationships and caused his mother, father, sister and grandfather to experience loss of affection and familial relationships.

### PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs request the Court to assume jurisdiction, and set a jury trial on this matter where the jury will be asked to award Jake and his parents, grandparent and sister as follows:

1. Financial reimbursement for all private school tuition (Fusion Academy to the extent not previously paid or ordered by the remand hearing officer); and costs for Little Keswick and Woodhall, including psychiatric care, for a total of $849,000.00 (to the extent not ordered to be paid by the remand hearing officer);

2. Pain and suffering experienced by Jake and his family (Hannah Wier, Daniel Wier, Cricket Wier and Mike Inselmann) as a result of separation from the family, lack of relationship with sister Cricket, and future care necessary to address his PTSD.

3. Further, as a result of Defendants' actions or inactions, Jake had to repeat 7th grade—he started at Fusion Academy but did not finish 7th grade there and so, had to repeat 7th grade at Little Keswick. As a result, Jake is an entire year late in graduating from high school.

4. Actual damages for related costs.

5. Attorneys' fees for this lawsuit.

6. Any other relief that is just and equitable.

*/s/Sonja D. Kerr*
Sonja D. Kerr, Tx Bar No. 24095771
Catherine Michael, Tx Bar No. 4079661
Connell Michael Kerr, LLP
**Main Office:**
550 Congressional Ave, Suite 115
Carmel IN 46032
Ph: 317-343-4482
**Austin Office**:
9600 Great Hills Trail, Suite 150W
Austin Tx 78759
Ph: 512-637-1083
Fax: 512-717-5204
Email: sonja@cmklawfirm.com
Email:catherine@cmklawfirm.com
*Lead counsel*

*/s/Dorene Philpot*
Dorene Philpot, TX Bar No. 24055011
Philpot Law Office PLLC
275 Bristol Lane
Livingston TX 77351
voice 281-989-2010
fax 866-324-4995
email: fape4kids@gmail.com

**Counsel for O.W., Parents (Hannah and Dan), Caroline (Cricket) and Mike Inselmann, Grandfather**